**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ABC DIAMONDS INC.,** | |
| Individually and on behalf of all others similarly situated | Case Number: 1:20-cv-07097 |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| **THE HARTFORD FINANCIAL SERVICES GROUP, INC., and HARTFORD CASUALTY INSURANCE COMPANY** | |
| Defendants. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff ABC Diamonds Inc. ("ABC" or "Plaintiff"), both individually and on behalf of all others similarly situated, files this class action First Amended Class Action Complaint against Defendants The Hartford Financial Services Group Inc. and Hartford Casualty Insurance Company (collectively "Defendants" or "Hartford"), and in support of its claims states the following on information and belief based on reasonable investigation and discovery, except where specifically identified as being based on personal knowledge:

## INTRODUCTION

1.     On personal knowledge, Plaintiff ABC is a corporation operating as a jeweler located in Chicago, Illinois.

2.     To protect its properties and income from the operation of its businesses, ABC purchased a Spectrum Business Owner's commercial insurance policy issued by Hartford bearing policy number 83 SBA TZ9442 SA ("Spectrum Policy"). A true and correct copy of the policy is attached as **Exhibit A**.

3.      Under the Spectrum Policy, Hartford is responsible for receiving and managing claims and loss notices, responding to questions about insurance and coverage and paying claims for covered losses.

4.      The Spectrum Policy is a bilateral contract: Plaintiff agreed to pay premiums to Hartford in exchange for Hartford's promises of coverage for all risks of loss except those specifically and unambiguously excluded.

5.      Plaintiff reasonably expected that claims for loss of business income and extra expenses arising from the inability to physically use its insured premises would be paid unless specifically and unambiguously excluded.

6.      Among other types of coverage, the Spectrum Policy protects Plaintiff against an actual loss of business income due to a "suspension" of the business's "operations" due to direct physical loss of or damage to the insured premises.

7.      Specifically, the *Special Property Coverage Form* (SS 00 07 07 05) endorsement to the Spectrum Policy protects Plaintiff against the actual loss of business income due to a suspension of Plaintiff's operations.  Along with this business income coverage, Plaintiff also had in effect "Extra Expense" coverage under which Hartford promised to pay necessary expenses Plaintiff incurred during a period of restoration that it would not have otherwise incurred if there had been no direct physical loss of or physical damage to the insured premises.

8.      Additionally, the *Special Property Coverage Form* (SS 00 07 07 05) endorsement provides "Civil Authority" coverage, under which Hartford promised to pay for loss of business income sustained when the action of a civil authority prohibits access to the insured premises.

9.      Plaintiff duly complied with its obligations under the Spectrum Policy, and timely paid the requisite premiums.

10. On March 21, 2020, the Governor of the State of Illinois issued an Executive Order requiring that all individuals must stay at home, with exceptions for essential activities, essential government functions, and essential businesses and operations.[1]

11. As a result of this and other local government orders, ABC was forced to suspend the physical use of its insured premises in Illinois for purposes of conducting its business activities.

12. As a result of the Orders of the various civil authorities, Plaintiff suffered, and/or continues to suffer, significant and injurious losses and expenses directly related to the physical inability to use the locations covered by the Spectrum Policy.

13. The Spectrum Policy obligated Hartford to provide coverage for, and to pay, business income losses and extra expense losses resulting from the suspension of Plaintiff's operations, including suspensions resulting from actions of civil authorities. ABC provided notice of loss to Hartford on March 20, 2020.[2]

14. In response, on April 23, 2020, Hartford reneged on these obligations and wrongfully failed to fulfill its contractual obligation to provide coverage for, and pay, ABC's business income losses and extra expense losses resulting from the suspension of its operations, including suspensions resulting from actions of civil authorities. The actions of Hartford in improperly denying ABC's claim were a blatant disregard for its contractual rights resulting in a material breach of Hartford's duties and obligation owed under the Spectrum Policy and deprived it of the benefit of its bargain causing serious financial damages to Plaintiff.

---

[1] *See* attached **Exhibit B**, Illinois Executive Order No. 2020-10.

[2] *See* attached **Exhibit C**, Hartford April 23, 2020 Coverage Disclaimer Letter.

15.     Under the Spectrum Policy, Hartford promised to cover these losses, and is obligated to pay for them. But in blatant breach of its contractual obligations, Hartford has failed to pay for these losses.

16.     Upon information and belief, Hartford has failed to pay for similar losses of other Illinois insureds holding policies that are, in all material respects, identical.

### THE PARTIES

17.     On personal knowledge, ABC is corporation organized under the laws of and existing in the State of Illinois with a principal place of business located at 29 East Madison Street, Suite 1818, Chicago, Illinois 60602.

18.     Defendant The Hartford Financial Services Group, Inc. is a corporation organized under the laws of Connecticut, with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.

19.     Defendant Hartford Casualty Insurance Company is a corporation organized under the laws of Indiana, with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155. Hartford Casualty Insurance Company is a wholly owned underwriting subsidiary of The Hartford Financial Services Group, Inc.

20.     At all material times hereto, Defendants conducted and transacted business through the selling and issuing of insurance policies, including, but not limited to, selling and issuing commercial property coverage to Plaintiff and all other Class Members as defined *infra*.

21.     At all times relevant, the Defendants were acting in the course and scope of such agency, representation, joint venture, conspiracy, consultancy, predecessor agreement, successor agreement, service and employment, with knowledge, acquiescence, and ratification of each other.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and property that is the subject of the action is situated in this District.

24.     This Court has personal jurisdiction over the Defendants because Plaintiff's claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Illinois; Defendants breaching a contract in Illinois by failing to perform acts required by contract to be performed in Illinois; and Defendants contracting to insure property in Illinois, including, but not limited to, premises insured under the Spectrum Policy. Defendants also purposefully availed themselves of the opportunity of conducting activities in the State of Illinois by marketing their insurance policies and services within Illinois, and intentionally developing relationships with brokers, agents, and customers within Illinois to insure property within Illinois, all of which resulted in the issuance of policies at issue in this class action.

## FACTUAL BACKGROUND

*The Policy*

25.     On personal knowledge, in or about January 2020, ABC renewed its Spectrum Policy. The Spectrum Policy has a policy period of January 9, 2020, to January 9, 2021. The

insured premises under the Spectrum Policy is 29 East Madison Street, Suite 1818, Chicago, Illinois 60602.

26.     The Spectrum Policy is the same or substantially similar to all other Spectrum Policies issued by Hartford to Class members.

27.     The Spectrum Policy provides coverage on an "all risk" rather than specified peril basis. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

28.     The Spectrum Policy, in the Special Property Coverage Form, states:

> **A.      Coverage**
>
> **We will pay for direct physical loss of <u>or</u> damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.**

29.     The Spectrum Policy contains both a "Specified Cause of Loss" category and "Covered Cause of Loss" category, the latter of which is an all-risk coverage form meaning that all risks are covered unless specifically excluded or limited by the Policy. All risks coverage is defined by limitations and exclusions in the policies.

30.     Under paragraph "A. Coverage" subparagraph 3 "Covered Causes of Loss" of the Special Property Coverage Form, the Spectrum Policy provides coverage for all "RISKS OF DIRECT PHYSICAL LOSS unless the loss is:  a. Excluded in Section **B., EXCLUSIONS**, or  b. Limited in Paragraph **A.4**. Limitations ...." (emphasis in original).

31.     Under paragraph "A. COVERAGE" subparagraph 5. "Additional Coverages" of the Special Property Coverage Form, the Spectrum Policy provides coverage for, among other things: "o. Business Income"; "p. Extra Expense"; "q. Civil Authority"; "r. Extended Business Income" and "s. Business Income from Dependent Properties."

32.     So long as the Plaintiff sustained a physical loss of its insured property, the

Defendants promised:

**o.      Business Income**

**We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss…**

**p.      Extra Expense**

**We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.**

33.     Neither "damage" nor the phrases "direct physical loss" and "damage to property"

are defined by the Spectrum Policy. However, "suspension" is defined as "a. The partial shutdown

or complete cessation of your business activities; or 2. That a part or all of the 'scheduled premises'

is rendered untenantable as a result of a Covered Cause of Loss if coverage for Business Income

applies to the policy."

34.     The Spectrum Policy also provides Extended Business Income coverage, as

follows:

**r.      Extended Business Income**

**If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:**

**(a)      Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and**

**(b)      Ends on the earlier of:**

      i.    **The date you could restore your "operations", with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or**

     ii.    **30 consecutive days after the date determined in (1)(4) above.**

**Loss of Business Income must be caused by direct physical loss <u>or</u> physical damage at the "scheduled premises" caused by or resulting from a Covered Cause of Loss.**

35.    In addition to promising to pay for loss of Business Income, under the Spectrum Policy, Defendants also promised to pay for certain necessary "Extra Expense." Extra Expense is defined as expenses that the policyholder incurs to "minimize the suspension of business if you cannot continue 'operations'."

36.    The Spectrum Policy also provides additional "Civil Authority" coverage as follows:

    **q.    Civil Authority**

    **(1)    This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises"…**

37.    The Business Income and Extra Expense, as well as the Extended Business Income, coverages are separate, independent and not mutually exclusive of the coverage for Civil Authority; thus, the Plaintiff theoretically could recover under any one of these coverages or all of these coverages at the same time.

*History of COVID-19*

38.    On December 31, 2019, the World Health Organization reported people in China were becoming sick due to a mysterious form of pneumonia.

39.     On January 11, 2020, China reported its first death from the mysterious form of pneumonia.

40.     On January 21, 2020, the first confirmed case of the mysterious form of pneumonia was reported in the United States.

41.     On January 30, 2020, for only the sixth time in its history, the World Health Organization, declared the outbreak of the mysterious form of pneumonia a Public Health Emergency of International Concern.

42.     On February 29, 2020, the first death caused by COVID-19 was reported in the United States.

43.     On March 13, 2020, President Trump declares the outbreak of COVID-19 to be a national emergency.

44.     As of March 17, 2020, COVID-19 was reported to be present in every state in the United States.

45.     As of March 26, 2020, the United States had more confirmed cases of COVID-19 than any other country in the world.

46.     Per the Centers for Disease Control and Prevention ("CDC"), there are no medications approved to treat COVID-19, and those vaccines that have received emergency use authorization as of the filing of this First Amended Complaint have not been widely distributed.

*Actions of Civil Authority by the State of Illinois*

47.     On March 9, 2020, Governor J.B. Pritzker declared all counties in the State of Illinois as a disaster area, specifically "in response to the outbreak of COVID-19." On April 1, Governor Pritzker again declared all counties in the State of Illinois as a disaster area, specifically "in response to the exponential spread of COVID-19."

48.     On March 15, 2020, Illinois Governor J.B. Pritzker issued Executive Order 2020-07 stating "it is necessary and appropriate for the State of Illinois to immediately take measures to protect the public's health in response to this COVID19 outbreak." With this goal in mind, Governor Pritzker ordered that all bars and restaurants close to the public effective March 16, 2020, to March 30, 2020 (later extended to April 30, 2020 per COVID-19 Executive Order No. 16), and prohibiting all public and private gatherings of 50 people or more, in addition other strict mandates.

49.     The stated goal of this order was to slow the spread of COVID-19 by minimizing in-person interaction in an environment with "frequently used services in public settings, including bars and restaurants…" The March 15th order further provided that "the ongoing spread of COVID-19 and the danger the virus poses to the public's health and wellness require the reduction of on-premises consumption of food and beverages."

50.     On March 20, 2020, Governor Pritzker issued a Closure Order (Executive Order 2020-10) (a.k.a., a Stay At Home Order) requiring all Illinois residents to stay at home barring exceptions such as essential travel for essential work or supplies, exercise and recreation, through April 7, 2020. Moreover, the March 20th order reduced the allowable public and private gathering size to no more than 10 people.

51.     On March 26, 2020, Chicago Mayor Lori Lightfoot shut down Chicago's most popular gathering spots, including the entire lakefront and all its parks, bike trails and beaches.

52.     On April 30, 2020, Executive Order 2020-32 extended the prohibition on non-essential services until May 29, 2020 (together with other Order 32-10, the "Closure Orders"). Pursuant to the Orders, "[r]etail stores not designated as Essential Businesses and Operations may re-open for the limited purposes of fulfilling telephone and online orders through pick-up outside

the store and delivery – which are deemed to be Minimum Basic Operations. Employees working in the store must follow the social Distancing Requirements, and must wear a face covering when they may come within six feet of another employee or a customer."

53.     On May 1, 2020, the Mayor of Chicago and the Governor of Illinois issued public health order No. 2020-3 requiring all Chicagoans to stay at home except for essential needs, such as getting groceries once a week or seeking medical care, stay 6 feet away from others and always wear a face covering.

54.     On November, 18, 2020, the state of Illinois again implemented a state at home order, requiring, among other things, that retail stores cap occupancy at 25 percent of store capacity.[3]

55.     The actions of the State of Illinois directly forced ABC to cease, suspend and/or severely limit its physical use of the insured premises and corresponding business operations.

*Plaintiff's Covered Loss*

56.     The COVID-19 pandemic caused civil authorities throughout Illinois to issue orders requiring the suspension of business and/or use of commercial property, including the property of Plaintiffs and other class members as well as property in the immediate area of such covered property.

57.     The Civil Authority Orders include, but are not limited to, the following Executive Orders:

> March 20, 2020 Executive Order by Governor Pritzker which stated that all individuals must stay at home, with exceptions for essential activities, essential government functions, and essential businesses and operations;

---

[3] *See* attached **Exhibit D**, Illinois Executive Order No. 2020-73.

August 21, 2020 Executive Order 2020-52 reissuing most executive orders and extending a majority of the provisions through September 19, 2020;

September 19, 2020 Executive Order 2020-55 reissuing most executive orders and extending a majority of the provisions through October 17, 2020;

October 16, 2020 Executive Order 2020-59 reissuing most executive orders and extending a majority of the Provisions through November 14, 2020; and

November 18, 2020 Executive Order 2020-73 establishing occupancy restrictions at business premises.

58.     There has been a direct physical loss of the covered premises under the Spectrum Policy by, among other things, denying access to the property, preventing customers and employees from physically occupying the property, causing the property to be physically uninhabitable by customers and employees, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

59.     Plaintiff has suffered a suspension of normal business operations and a cessation of all operations on the premises, sustained losses of business income, and incurred extra expenses.

60.     These losses and expenses have continued through the date of filing of this action.

61.     These losses and expenses are not excluded from coverage under the Spectrum Policy, and because the Spectrum Policy is an all-risk policy, and Plaintiff has complied with their contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

62.     Plaintiff has suffered a suspension and/or cessation of all normal business operations given the response to the global pandemic associated with the spread of COVID-19, including the actions of civil authority described herein.

63.     These losses and expenses have continued through the date of filing of this action, and will continue unabated unless and until Hartford fulfills its contractual obligations under the Spectrum Policy.

*Hartford's Uniform Practice to Deny Coverage for COVID-19 Business Interruption Losses*

64.     Hartford arbitrarily and wrongfully disclaimed coverage for Plaintiff's losses.

65.     Defendants' denial of coverage was pre-determined and without regard to the individual circumstances of Plaintiff or other insureds.

66.     Before Plaintiff and other members of the proposed class of policyholders submitted notice of and information about their claims, Defendants had determined not to afford coverage for any such claims.

67.     Defendants have refused to make payment to Plaintiff for damages resulting from the covered losses described *supra*, which constitutes a breach of the Spectrum Policy.

68.     Defendants' refusal to cover the covered losses is erroneous and unsupported by the plain language of the Spectrum Policy.

69.     As such, Defendants owe Plaintiff's insurance coverage and benefits under the Spectrum Policy for the losses, and there is no valid basis for its refusal to issue the same.

70.     Plaintiff continues to be damaged by Defendants' refusal to issue the full amounts due and owing under the Spectrum Policy.

## CLASS ACTION ALLEGATIONS

71.     The class claims all derive directly from a single course of conduct by Defendants: their systematic, uniform, capricious and arbitrary refusal to pay insureds for covered losses and the actions taken by civil authorities to suspend business operations.

72.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

73.     Plaintiff seeks to represent an Illinois state-wide class as the Court may deem appropriate defined as:

a)      All Illinois businesses that purchased Business Income and Extra Expense coverage under a policy of insurance issued by Defendants covering the period of March 2020 through the present that suffered a suspension of business operations due to government prohibitions on the use of their insured premises, and for which Defendants have either actually denied or stated they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered cause of loss, or pay for the covered losses ("the Business Income Coverage Class").

b)      All Illinois businesses that purchased Extended Business Income coverage under a policy of insurance issued by Defendants covering the period of March 2020 through the present that incurred extra expenses to avoid or minimize the suspension of business operations due to government prohibitions on the use of their insured premises, and for which Defendants have either actually denied or stated they will deny a claim for the extended business income or have otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses ("the Extended Business Income Coverage Class").

14

c)      All Illinois businesses that purchased Civil Authority coverage under a policy of insurance issued by Defendants, covering the period of March 2020 through the present that suffered an actual loss of Business Income and/or Extra Expense due to government prohibitions on the use of their insured premises, and for which Defendants have either actually denied or stated they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered cause of loss, or pay for the covered losses ("the Civil Authority Coverage Class").

74.      Excluded from each defined proposed Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

75.      Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

76.      This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

*Numerosity*

77.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, thousands of members of each proposed Class, and these individuals and entities are spread out across the State and the United States.

78.      The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or its agents' books and records. Class members

may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

*Commonality and Predominance*

79.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Defendants issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a)    Whether Plaintiff and the Class members suffered a covered cause of loss under the policies issued to members of the Class;

b)    Whether Defendants wrongfully, capriciously and arbitrarily denied all claims based on the facts set forth herein;

c)    Whether Defendants' Business Income coverage applies based on the facts set forth herein;

d)    Whether Defendants' Civil Authority coverage applies to a loss of Business Income based on the facts set forth herein;

e)    Whether Defendants' Extra Expense coverage applies to efforts to avoid or minimize a loss caused by the suspension of business based on the facts set forth herein;

f)    Whether Defendants have breached their contracts of insurance through a uniform and blanket denial of all claims for business losses based on the facts set forth herein;

g)      Whether the Defendants act in bad faith breach of contract and the duty of good faith and fair dealing through a uniform and blanket denial of all claims for business losses based on the facts set forth herein; and

h)      Whether Plaintiff and the Class members suffered damages as a result of Defendants' actions; and

i)      Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

*Typicality*

80.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Defendants. Plaintiff and the other Class members are all similarly affected by Defendants' refusal to pay under their property insurance policies. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged. The relief Plaintiff seek is typical of the relief sought for the absent Class members.

*Adequacy of Representation*

81.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex class action and insurance coverage litigation.

82.      Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor their counsel has interests adverse to those of the Class members.

*Inconsistent or Varying Adjudications and the Risk of Impediments to Other
Class Members' Interests*

83.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiff seeks class-wide adjudication as to the interpretation and scope of Defendants' Commercial Business Owner insurance policies that use the same language and terms as the Spectrum Policy. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

*Final Injunctive and/or Corresponding Declaratory Relief with respect to
the Class is Appropriate*

84.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to Plaintiff and the members of the Classes, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The class claims all derive directly from Defendants' systematic, uniform, capricious and arbitrary refusal to pay insureds for losses suffered due to actions taken by civil authorities to suspend or interrupt business operations in response to the pandemic associated with the spread of COVID-19. Defendants' actions or refusal to act are grounded upon the same generally applicable legal theories.

*Superiority*

85.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct and the interpretation of the common language in their health club insurance policies predominate over any questions affecting only individual Class members.

86.     Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

87.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

88.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## CAUSES OF ACTION

### COUNT I:
### DECLARATORY JUDGMENT
#### (On behalf of the Business Income Coverage Class)

89.     Plaintiff incorporates by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

90.     Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

91.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

92.     The Spectrum Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Spectrum Policies.

93.     In the Spectrum Policy, Defendants promised to pay for losses of business income and extra expense sustained as a result of perils not excluded under the Spectrum Policy. Specifically, Defendants promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

94.     Plaintiff and Class members suffered direct physical loss of or damage to Plaintiff's insured locations and other Class members' insured premises, resulting in interruptions or suspensions of business operations at the locations. These suspensions and interruptions have caused Plaintiff and Class members to suffer losses of business income and extra expense.

95.     These suspensions and interruptions, and the resulting losses, triggered business income and extra expense coverage under the Spectrum Policy and other Class members' policies.

96.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

97.     Defendants, without justification, deny that the Plaintiff's Spectrum Policy and other Class members' policies provide coverage for these losses.

98.     Plaintiff seeks a Declaratory Judgment that its Spectrum Policy and other Class members' policies provide coverage for the losses of business income and extra expense attributable to the facts set forth above.

99.     An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Defendants' obligations to reimburse Plaintiff and other Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

**WHEREFORE**, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Spectrum Policy and other Class members' policies provide coverage for Class members' losses of business income.

## COUNT II: BREACH OF CONTRACT
### (On behalf of the Business Income Coverage Class)

100.     Plaintiff incorporates by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

101.     Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

102.     The Spectrum Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

103.     In the Spectrum Policy, Defendants promised to pay for losses of business income and extra expense incurred as a result of perils not excluded under the Spectrum Policy.

Specifically, Defendants promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

104.    Plaintiff and Class members have suffered a direct physical loss of Plaintiff's insured locations and other Class members' insured premises as a result of interruptions or suspensions of business operations at these premises. These interruptions and suspensions have caused Class members to suffer losses of business income and extra expense.

105.    These losses triggered business income and extra expense coverage under both the Spectrum Policies and other Class members' policies.

106.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

107.    Defendants, without justification and in bad faith, have denied coverage and refused performance under the Spectrum Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Spectrum Policy and other Class members' policies.

108.    As a result of Defendants' breaches of the Spectrum Policy and other Class members' policies, Plaintiffs and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Spectrum Policy and other Class Members' policies, and seeks all other relief deemed appropriate by this Court.

**COUNT III: BAD FAITH BREACH OF CONTRACT AND
THE DUTY OF GOOD FAITH AND FAIR DEALING
(On behalf of the Business Income Coverage Class)**

109.    Plaintiff incorporates by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

110.    Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

111.    The Spectrum Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Spectrum Policy.

112.    In the Spectrum Policy, Defendants promised to pay for losses of business income and extra expense incurred as a result of perils not excluded under the Spectrum Policy. Specifically, Defendants promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

113.    Plaintiff and Class members suffered an actual loss of business income and extra expense to the necessary suspension of Plaintiff's and other Class members' business operations at insured premises and said suspension(s) were caused by direct physical loss of Plaintiff's and other Class members' insured premises directly caused by or resulting from government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic, which are Covered Causes of Loss under the Spectrum Policy and other Class members' policies. These actual losses, therefore, triggered Business Income and Extra Expense coverage under both the Spectrum Policy and other Class members' policies.

114.    Government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic were direct, physical and foreseeable causes of loss under the Spectrum Policy

and other Class members' policies, and they caused, and/or resulted in, physical loss of the Plaintiff's and other Class members' insured premises and property immediately adjacent to each. The Government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic rendered the Plaintiff's and other Class members' insured premises unusable and/or uninhabitable; thus, mandating a suspension of business operations.

115.     These losses and expenses are not excluded from coverage under the Spectrum Policy. Because the Spectrum Policy is an all-risk policy, and Covered Causes of Loss are determined by exclusions, the government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic are sufficient to trigger Business Income and Extra Expense coverage.

116.     Furthermore, the government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic caused direct physical loss of the Plaintiff's various business premises and the other Class Members' insured premises, the nature of such loss of property having been recognized by civil authorities in Orders addressing COVID-19.

117.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

118.     The actions of the Defendants give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiff and other Class members were covered under Plaintiff's Spectrum Policy, as well as the policies of other Business Income Coverage Class members, and the Defendants have breached the terms of said policies by denying business income and extra expense coverage to the Plaintiffs and other Class members. Defendants' actions in breaching the terms of the Spectrum Policy and the other Class Members'

policies, in bad faith, have proximately caused damages to Plaintiff and other Class members, and the damages were reasonably foreseeable to the Defendants.

119.    It appears that the Defendants' conduct was performed because they placed their own financial interests before the Plaintiff's and other Class Members' financial interests.

120.    Further, the actions of the Defendants in denying business income and extra expense coverage to the Plaintiff and other Class Members were done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

121.    Implied in the Spectrum Policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants' conduct as aforesaid breached the duty of good faith and fair dealing which further gives rise to the tort of bad faith for the breach of contract.

122.    Defendants, at all times relevant hereto, owed Plaintiff and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of business income and extra expense coverage by Defendants constituted a bad faith breach of contract and was totally made with only the Defendants' best interests in mind and in total disregard of the contractual rights of Plaintiff and other Class Members.

123.    Defendants' bad faith material breach(es) of the Spectrum Policy, as well as other Class members' policies, have resulted in actual and substantial damages to the Plaintiff and Business Income Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages and consequential damages, an independent tort entitling Plaintiff and other Class Members to punitive damages in

an amount which will punish the Defendants for their intentional, grossly negligent, and/or reckless conduct as well as to deter Defendants and others from similar misconduct in the future.

**WHEREFORE**, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendants' bad faith breach(es) of the Spectrum Policy and other Class Members' policies, and seeks all other relief deemed appropriate by this Court.

**COUNT IV:**
**DECLARATORY JUDGMENT**
**(On behalf of the Extended Business Income Coverage Class)**

124.    Plaintiff incorporates by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

125.    Plaintiff brings this Count both individually and on behalf of the other members of the Extended Business Income Coverage Class.

126.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

127.    The Spectrum Policy and the policies of other Extended Business Income Coverage Class members are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the respective policies.

128.    Specifically, Defendants promised to pay for extended business income for losses incurred by Plaintiff and other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. Extended business income included income to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

129.    Plaintiff and Class members suffered direct physical loss of Plaintiff's locations and other Class members' insured premises, resulting in suspensions or interruptions of business operations at these premises. As a result, Plaintiff and other Class members have incurred losses, as defined in the Spectrum Policy and other Class members' policies.

130.    These losses triggered Extended Business Income coverage under the Spectrum Policy and other Class members' policies.

131.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

132.    Defendants, without justification, deny that the Spectrum Policy and other Class members' policies provide coverage for Extended Business Income.

133.    Plaintiff, both individually and on behalf of the other members of the Extended Business Income Coverage Class, seeks a Declaratory Judgment that the Spectrum Policy, and those of other members of the Extended Business Income Coverage Class, provides coverage for these extended business income.

134.    An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members for extended business income. Accordingly, the Declaratory Judgment sought is justiciable.

**WHEREFORE**, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Spectrum Policy and other Class members' policies provide coverage for Class members' extended business income losses.

## COUNT V: BREACH OF CONTRACT
### (On behalf of the Extended Business Income Coverage Class)

135.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

136.    Plaintiff brings this Count individually and on behalf of the other members of the Extended Business Income Coverage Class.

137.    The Spectrum Policy, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

138.    Specifically, Defendants promised to pay for extended business income for losses incurred by Plaintiff and other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. Extended business income losses included income to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

139.    Plaintiff and Class members suffered direct physical loss of or damage to the Plaintiff's insured locations and other Class members' insured premises, resulting in suspensions and interruptions of business operations at these premises. These suspensions and interruptions have caused Class members to incur Extra Expenses.

140.    These expenses triggered extended business income coverage under the Spectrum Policy and other Class members' policies.

141.    Plaintiff and the other Class members have complied with all applicable provisions of the Spectrum Policy, including payment of premiums.

142.    Defendants, without justification and in bad faith, have denied coverage and refused performance extended business income. Accordingly, Defendants are in breach of the Spectrum Policy and other Class members' policies.

143.    As a result of Defendants' breaches of the Spectrum Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Spectrum Policy and other Class Members' policies, and seeks all other relief deemed appropriate by this Court.

### COUNT VI: BAD FAITH BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING
**(On behalf of the Extended Business Income Coverage Class)**

144.    Plaintiff incorporates by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

145.    Plaintiff brings this Count both individually and on behalf of the other members of the Extended Business Income Coverage Class.

146.    The Spectrum Policy and the policies of other Extended Business Income Coverage Class members are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

147.    In the Spectrum Policy, Defendants promised to pay extended business income for losses, pursuant to the Specialty Property Coverage Form's Extended Business Income provision contained the Spectrum Policy and other Class Members' policies, incurred as a result of perils not excluded under the policies. Specifically, Defendants promised to pay for losses of Extended Business Income sustained as a result of a suspension of business operations during the period of restoration.

148.    Plaintiff and Class members suffered an actual loss of business income due to the necessary Suspension of Plaintiff's and other Class members' business operations at insured

premises and said suspension(s) were caused by direct physical loss of and damage to Plaintiff's and other Class members' insured premises caused by or resulting from government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic, which are Covered Causes of Loss under the Spectrum Policy and other Class members' policies. These actual losses, therefore, triggered Specialty Property Coverage Form's Extended Business Income coverage under both the Spectrum Policy and other Class members' policies.

149.    Government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic were direct, physical and foreseeable causes of loss under the Spectrum Policy and other Class members' policies and they each caused, and/or resulted in, dangerous physical conditions at, and physical injuries to, the Plaintiff's and other Class members' insured premises and property immediately adjacent to each. The government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic rendered the Plaintiff's and other Class members' insured premises unusable and/or uninhabitable; thus, mandating a suspension of business operations.

150.    These losses and expenses are not excluded from coverage under the Spectrum Policy. Because the Spectrum Policy is an all-risk policy, and Covered Causes of Loss are determined by exclusions, the government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic are sufficient to trigger Extended Business Income coverage.

151.    Furthermore, the government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic caused direct physical loss of the Plaintiff's various business premises and the other Class Members' insured premises the nature of such loss of property having been recognized by civil authorities in Orders addressing COVID-19.

152.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

153.    The actions of the Defendants give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiff and other Class members were covered under the Spectrum Policy, as well as the policies of other Extended Business Income Coverage Class members, and the Defendants have breached the terms of said policies by denying extended business income coverage to the Plaintiff and other Class members. Defendants' actions in breaching the terms of the Spectrum Policy and the other Class Members' policies, in bad faith, have proximately caused damages to Plaintiffs and other Class members and the damages were reasonably foreseeable to the Defendants.

154.    It appears that the Defendants' conduct was performed because they placed their own financial interests before the Plaintiff's and other Class Members' financial interests.

155.    Further, the actions of the Defendants in denying extended business income coverage to the Plaintiff and other Class Members were done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

156.    Implied in the Spectrum Policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants' conduct as aforesaid breached the duty of good faith and fair dealing which further gives rise to the tort of bad faith for the breach of contract.

157.    Defendants, at all times relevant hereto, owed Plaintiff and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of extended business income coverage by Defendants constituted a bad faith breach of contract and

was totally made with only the Defendants' best interests in mind and in total disregard of the contractual rights of Plaintiffs and other Class Members.

158.    Defendants' bad faith material breach(es) of the Spectrum Policy, as well as other Class members' policies, has resulted in actual and substantial damages to the Plaintiff and Extended Business Income Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages, and consequential damages, an independent tort entitling Plaintiff and other Class Members to punitive damages in an amount which will punish the Defendants for their intentional, grossly negligent, and/or reckless conduct as well as to deter Defendants and others from similar misconduct in the future.

**WHEREFORE**, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendants' bad faith breach(es) of the Spectrum Policy and other Class Members' policies, and seeks all other relief deemed appropriate by this Court.

## COUNT VII: DECLARATORY JUDGMENT
### (On behalf of the Civil Authority Coverage Class)

159.    Plaintiff incorporates by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

160.    Plaintiff brings this Count both individually and on behalf of the other members of the Civil Authority Coverage Class. 112. Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

161.    The Spectrum Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

32

162.    In the Spectrum Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when, among other things, a covered cause of loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and that access to the "scheduled premises" was prohibited by order of the civil authority as a direct result of a Covered Cause of Loss to property in the immediate area.

163.    Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Spectrum Policy and Class members' policies.

164.    These losses satisfied all requirements to trigger Civil Authority coverage under the Spectrum Policy and other Class members' policies.

165.    Plaintiff and the other Class members have complied with all applicable provisions of the Spectrum Policy, including payment of premiums.

166.    Defendants, without justification, deny that the Spectrum Policy provides coverage for these losses.

167.    Plaintiff seeks a Declaratory Judgment that the Spectrum Policy and other Class members' policies provide coverage for the losses that Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

168.    An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

**WHEREFORE**, Plaintiff, both individually and on behalf of other Class members, requests that this Court enter a Declaratory Judgment declaring that the policies provide Civil

Authority coverage for the losses and extra expenses incurred by Plaintiffs and the other Class members.

## COUNT VIII: BREACH OF CONTRACT
### (On behalf of the Civil Authority Coverage Class)

169.    Plaintiff incorporates by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

170.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

171.    The Spectrum Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses and expenses covered by the policies.

172.    In the Spectrum Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when a covered cause of loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and that access to the "scheduled premises" was prohibited by order of the civil authority as a direct result of a Covered Cause of Loss to property in the immediate area.

173.    Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Spectrum Policy and Class members' policies.

174.    These losses satisfied all requirements to trigger Civil Authority coverage under the Spectrum Policy and other Class members' policies.

175.    Plaintiff and the other Class members have complied with all applicable provisions of their policies, including payment of premiums.

176.     Defendants, without justification and in bad faith, have refused performance under the Spectrum Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Spectrum Policy and other Class members' policies.

177.     As a result of Defendants' breaches of the Spectrum Policy and other Class members' policies, Plaintiffs and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, Plaintiff seeks compensatory damages resulting from Defendants' breaches of the Spectrum Policy and other Class members' policies, and seeks all other relief deemed appropriate by this Court.

**COUNT IX: BAD FAITH BREACH OF CONTRACT AND
THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(On behalf of the Civil Authority Coverage Class)**

178.     Plaintiff incorporates by reference and re-allege paragraphs 1 through 88 as though fully set forth herein.

179.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

180.     The Spectrum Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants was paid premiums in exchange for promises to pay Class members' losses and expenses covered by the policies.

181.     In the Spectrum Policy and other Class members' policies, Defendants promised to pay for actual loss of business income sustained and necessary extra expenses incurred when a Covered Cause of Loss caused damage to property other than property at the Plaintiff's respective insured premises or Class Members' insured premises and that the Plaintiff and other Class

Members suffered actual loss due to civil authorities prohibiting access to Plaintiff's and Class Members' premises and that access to the "scheduled premises" was prohibited by order of the civil authority as a direct result of a Covered Cause of Loss to property in the immediate area.

182. The government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic were direct, physical and foreseeable causes of loss under the Spectrum Policy and other Class members' policies and they each caused, and/or resulted in, the loss of Plaintiff's and other Class members' insured premises and property immediately adjacent to each. The government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic rendered the Plaintiff's and other Class members' insured premises and areas within the immediate area of the Plaintiff's business premises and other Class Members' insured premises unusable and/or uninhabitable; thus, prompting the Orders of civil authorities prohibiting access to the same.

183. These losses and expenses are not excluded from coverage under the Spectrum Policy. Because the Spectrum Policy are all-risk policies, and Covered Causes of Loss are determined by exclusions, the government shutdown orders imposed to slow the spread of COVID-19 disease and/or pandemic are sufficient to trigger Civil Authority coverage.

184. Plaintiffs and the other Class members have complied with all applicable provisions of the policies, including payment of premiums.

185. The actions of the Defendants give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiff and other Class members were covered under the Spectrum Policies, as well as the policies of other Civil Authority Coverage Class members, and the Defendants have breached the terms of said policies by denying Civil Authority coverage to the Plaintiff and other Class members. Defendants' actions in breaching the terms of the Spectrum Policy and the other Class Members' policies, in bad faith, have proximately

caused damages to Plaintiffs and other Class members and the damages were reasonably foreseeable to the Defendants.

186.    It appears that the Defendants' conduct was performed because they placed their own financial interests before the Plaintiff's and other Class Members' financial interests.

187.    Further, the actions of the Defendants in denying Civil Authority coverage to the Plaintiff and other Class Members was done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

188.    Implied in the Spectrum Policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants' conduct as aforesaid breached the duty of good faith and fair dealing which further gives rise to the tort of bad faith for the breach of contract.

189.    Defendants, at all times relevant hereto, owed Plaintiff and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of Civil Authority coverage by Defendants constituted a bad faith breach of contract and was totally made with only the Defendants' best interests in mind and in total disregard of the contractual rights of Plaintiff and other Class Members.

190.    Defendants' bad faith material breach(es) of the Spectrum Policy, as well as other Class members' policies, has resulted in actual and substantial damages to the Plaintiff and Civil Authority Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages, and consequential damages, an independent tort entitling Plaintiff and other Class Members to punitive damages in an amount which will punish the Defendants for their intentional, grossly negligent, and/or reckless conduct as well as to deter Defendants and others from similar misconduct in the future.

**WHEREFORE**, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendants' bad faith breach(es) of the Spectrum Policy and other Class Members' policies, and seeks all other relief deemed appropriate by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

A.     Entering an order certifying the proposed Classes, designating Plaintiff as Class Representative for each of the Classes, and appointing Plaintiff's attorneys as Counsel for the Classes;

B.     Entering declaratory judgments on Counts I, IV, and VII in favor of Plaintiff and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class as follows:

        a.   That all Business Income and Extra Expense, Civil Authority and Extended Business Income losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiff's and Class members' policies; and

        b.   Defendants are obligated to pay for the full amount of the Business Income and Extra Expense, Civil Authority and Extended Business Income losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above under Plaintiff's and Class members' policies;

C.      Entering judgments on counts II, V, and VIII in favor of Plaintiff and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class, and awarding damages for breach of contract in an amount to be determined at trial;

D.      Entering judgments on counts III, VI, IX in favor of the Plaintiff and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class, and awarding compensatory damages, incidental damages, consequential damages, and punitive damages for the Defendants' bad faith material breach(es) in an amount to be determined at trial;

E.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded, as well as attorneys' fees and costs; and

F.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated:  January 11, 2021

Respectfully submitted,

/s/ Lisa B. Weinstein
Lisa B. Weinstein
M. Elizabeth Graham**
Adam J. Gomez**
**GRANT & EISENHOFER P.A.**
30 N. LaSalle Street, Suite 2350
Chicago, IL 60602
T:  (312) 610-5350
lweinstein@gelaw.com
egraham@gelaw.com
agomez@gelaw.com

** *Pro Hac Vice* Forthcoming
*Attorneys for the Plaintiff and Putative Class*