UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABC DIAMONDS INC., | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 7097 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| HARTFORD CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

ABC Diamonds Inc. alleges in this diversity suit that Hartford Casualty Insurance Company, its insurer, wrongfully denied coverage for losses it suffered due to government-ordered shutdowns arising from the COVID-19 pandemic. Doc. 29. Hartford moves to dismiss the complaint under Civil Rule 12(b)(6), arguing that its policy does not cover ABC Diamonds's claimed losses. Doc. 31. The motion is granted.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in ABC Diamonds's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to ABC Diamonds as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).

In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

ABC Diamonds is a jewelry business in Chicago, Illinois. Doc. 29 at ¶¶ 1, 17. In March and April 2020, near the outset of the COVID-19 pandemic, the Governor of Illinois ordered the closure of all nonessential businesses. *Id*. at ¶¶ 51-59; Doc. 29-2. In compliance with those orders, ABC Diamonds closed its premises and discontinued its "physical operations." Doc. 29 at ¶¶ 47-48. Although ABC Diamonds eventually reopened, restrictions imposed by the Mayor of Chicago limited it to 50% capacity as of April 2021. *Id*. at ¶ 67. ABC Diamonds submitted a claim to recover its lost income under a commercial property insurance policy issued by Hartford, *id*. at ¶¶ 85-86, the pertinent terms of which are set forth below. Hartford denied coverage. *Id*. at ¶¶ 87, 90.

## Discussion

The meaning of a written contract "is generally a question of law for the court." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 586 (7th Cir. 2020). The parties agree that the Hartford policy is governed by Illinois law. Doc. 32 at 2, 5 & n.2, 7; Doc. 35 at 13, 16, 18.

Under Illinois law, an insurance policy, like any contract, "is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). "[The court's] primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007) (quoting

*Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). "While [the court] will not strain to find an ambiguity where none exists, neither will [it] adopt an interpretation which rests on gossamer distinctions that the average person, for whom the policy is written, cannot be expected to understand." *Munoz*, 930 N.E.2d at 1004 (internal quotation marks and citation omitted).

ABC Diamonds asserts coverage under four of the Hartford policy's coverage provisions: the "Business Income" provision, the "Extended Business Income" provision, the "Extra Expense" provision, and the "Civil Authority" provision. Doc. 29 at ¶¶ 111-212; Doc. 35 at 6-15; Doc. 29-1 at p. 34-35, § A.5.o, .p, .q, .r. Hartford contends that none of those provisions applies, Doc. 32 at 6-11; Doc. 37 at 3-8, but argues that even if any does apply, the policy's Virus Exclusion defeats coverage, Doc. 32 at 11-16; Doc. 37 at 8-16. Because none of the coverage provisions applies, there is no need to address the virus exclusion.

**I.    Business Income Provision**

The policy states that Hartford "will pay for direct physical loss of or physical damage to Covered Property at [ABC Diamonds's] premises … caused by or resulting from a Covered Cause of Loss." Doc. 29-1 at p. 25, § A. As noted, ABC Diamonds seeks coverage under the policy's Business Income provision, which states in relevant part:

> [Hartford] will pay for the actual loss of Business Income [ABC Diamonds] sustain[s] due to the necessary suspension of [its] "operations" during the "period of restoration." The suspension *must be caused by direct physical loss of or physical damage to property* at [ABC Diamonds's premises] … caused by or resulting from a Covered Cause of Loss.

*Id*. at p. 34, § A.5.o(1) (emphasis added). "Business Income," in turn, is defined as the "[n]et [i]ncome … that would have been earned or incurred if no direct physical loss or physical damage had occurred," plus normal operating expenses that continue to accrue. *Ibid*.

3

ABC Diamonds contends that the closure of its premises qualifies as a "direct physical loss of … property at [its premises]"—though not "damage to" such property—because it lost "access" to, "use" of, and "utility" from its premises. Doc. 35 at 6-14. Hartford takes the contrary view, arguing that "mere loss of *use*[,] without any tangible alteration to the physical condition or location of property at the insured's premises," is not covered. Doc. 32 at 8 (quoting *Chief of Staff LLC v. Hiscox Ins. Co.*, 532 F. Supp. 3d 598, 601-05 (N.D. Ill. 2021)). Hartford's reading is correct.

True enough, the noun "loss," standing alone, can refer to "depriv[ation] of … a possession." *Loss*, Oxford English Dictionary (2d ed. 1989) (def. 2a); *see also Loss*, Webster's Third New International Dictionary (1961) (def. 1a) ("the act or fact of losing," "failure to keep possession," "deprivation"). But the noun "loss" in the policy is modified by the adjective "physical," which in context means "tangible, concrete." *Physical*, Oxford English Dictionary (3d ed. updated Mar. 2006) (def. 6); *see also Physical*, Black's Law Dictionary (11th ed. 2019) (def. 2) ("pertaining to real, tangible objects"); *Physical*, Webster's Third New International Dictionary, *supra* (def. 2b) ("of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"). So "physical loss" refers not to *any* deprivation, but rather to a deprivation caused by a tangible or concrete change in the condition or location of the thing that is lost.

The complaint alleges no such deprivation. Instead, it alleges that ABC Diamonds's loss of use of its property was due to the Governor's and the Mayor's closure orders. Doc. 29 at ¶¶ 46-68. Those closure orders did not cause a concrete or tangible loss of ABC Diamonds's property. *See* 10A Steven Plitt *et al.*, *Couch on Insurance* § 148:46 (West 3d ed. updated Dec. 2020) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is

4

widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (footnotes omitted); *accord*, *e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890-93 (9th Cir. 2021) (California law); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 400-06 (6th Cir. 2021) (Ohio law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144-45 (8th Cir. 2021) (Iowa law). It follows that ABC Diamonds did not suffer the "physical loss" required for coverage under the Business Income provision.

Another strike against ABC Diamonds's position is that it is difficult to square with the Business Income provision's "period of restoration" language. As noted, the provision covers losses "due to the necessary suspension of [ABC Diamonds's] 'operations' during the 'period of restoration.'" Doc. 29-1 at p. 34, § A.5.o(1). As defined by the policy, the "period of restoration" ends on the earlier of (a) "the date when … the property at [ABC Diamonds's premises] should be repaired, rebuilt or replaced with reasonable speed and similar quality"; or (b) "[t]he date when [ABC Diamonds's] business is resumed at a new, permanent location." *Id*. at p. 48, § G.12.b.

If there had been a physical alteration to the condition or location of ABC Diamonds's property—for example, if a fire had destroyed its building, or if a thief had stolen its jewelry cases—one could assess when the "period of restoration" would end, for in those instances there would be something to "repair[], rebuil[d] or replace[]." *Ibid*. The same cannot be said of the mere loss of use of ABC Diamonds's property due to government closure orders. Under ABC Diamonds's theory—that the mere loss of use of property at its premises, without any physical alteration to the condition or location of that property, is covered—when would the period of

restoration end? That question is unanswerable, for if there has been no physical alteration to the property's condition or location, there is nothing to "repair[], rebuil[d] or replace[]." *Ibid*. Nor is there any reason to expect that, absent some physical alteration to property at ABC Diamonds's premises, the business would have to resume at "a new permanent location." *Ibid*. The dissonance between the "period of restoration" language, which is critical to application of the Business Income provision, and ABC Diamonds's interpretation of the provision confirms that the correct reading is the one requiring some physical change in the condition or location of property at the insured's premises. *See*, *e.g.*, *Mudpie*, 15 F.4th at 892 (California law) ("That this coverage extends only until covered property is repaired, rebuilt, or replaced, or the business moves to a new permanent location[,] suggests [that] the Policy contemplates providing coverage only if there are physical alterations to the property."); *Chief of Staff*, 532 F. Supp. 3d at 602-03 (Connecticut law) (similar); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) (Pennsylvania law) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature.").

ABC Diamonds offers other arguments to support its contrary reading of the Business Income provision, but none persuades.

1. ABC Diamonds argues that the court's interpretation of the phrase "physical loss" is correct as to policies that cover "physical loss *to* property," but incorrect as applied to policies, like the Hartford policy, that cover "physical loss *of* property." Doc. 35 at 6-14. In other words, ABC Diamonds submits that when a policy uses the phrase "*to* property," the insurer wins, and when it uses the phrase "*of* property," the insured wins. This is so, ABC Diamonds explains, because "direct physical loss *of* property speaks more broadly to a change in the policyholder's relationship with the property." *Id*. at 10 (emphasis added). That argument is unpersuasive.

True enough, in ordinary speech, "loss of" something is not necessarily the same as "loss to" something. When one refers to the "loss of *X*," she may mean to convey that someone or something once had *X*, but no longer does. *See Loss*, *Webster's Third New International Dictionary*, *supra* (def. 1a) (using as examples "precautions against loss or theft *of* property"; "loss *of* a leg"; "loss *of* sight"; "loss *of* reputation"; "loss *of* caste"; "virtual loss *of* three divisions of infantry") (emphasis added; other emphasis omitted); *ibid*. (def. 1b) (using as examples "bore up bravely under the loss *of* both parents"; "the explosion caused a temporary loss *of* hearing"; "embittered by the loss *of* his wife's affection") (emphasis added; other emphasis omitted). Under that meaning, the person or thing suffering the "loss of *X*" must be inferred from context. By contrast, when one refers to the "loss to *X*," it is *X* that has suffered the loss. *See ibid*. (def. 1c) (using as examples "his retirement was a serious loss *to* the company"; "her death was a loss *to* all who knew her") (emphasis added; other emphasis omitted).

As a theoretical matter, then, the phrase "loss of property" in an insurance policy might mean something different than the phrase "loss to property." When an insured suffers a "loss *of* property," the insured had some property that is now lost. When an insured suffers a "loss *to* property," it is the property that sustained the loss. But that distinction is immaterial for present purposes, for where, as here, the property that sustained the loss belongs to the insured, the loss is the insured's either way. So the choice of preposition (*or* or *to*) makes no practical difference here because it does not alter the coverage trigger: that there be a "physical loss" affecting "property" belonging to the insured. *See Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 485 F. Supp. 3d 1225, 1231 (C.D. Cal. 2020) (California law) ("The Court agrees with Plan Check that sometimes the distinction between prepositions is important, but finds that this case is not one of them."). That the loss must be "physical" is the principal consideration driving the

court's interpretation—not the subtlety of which preposition follows the word "loss"—and for the reasons given above, ABC Diamonds's loss of use of its premises due to the COVID-19 closure orders does not qualify as a "physical loss." *See Melcorp, Inc. v. W. Am. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 2853371, at *6-7 (N.D. Ill. July 8, 2021) (Illinois law) (reaching the same conclusion on analogous facts), *appeal docketed*, No. 21-2448 (7th Cir. Aug. 9, 2021).

2. ABC Diamonds next invokes the principle that a contract should not be interpreted to render superfluous any of its terms. Doc. 35 at 6-9; *see Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) ("An insurance policy, like any contract, is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose."). Specifically, ABC Diamonds argues that "physical loss" and "physical damage" must mean different things, and therefore that "conflating 'loss' with 'damage' would render the actual language of the Policy superfluous and meaningless." Doc. 35 at 9.

ABC Diamonds is correct that the phrases "direct physical loss" and "direct physical … damage" should be read so as not to completely overlap and thereby render superfluous one or the other. But it does not follow from that premise that mere loss of use—without any tangible alteration to the physical condition or location of the insured's property—falls within the meaning of either phrase. Read naturally, the two phrases can be read to exclude mere loss of use without rendering either of them superfluous.

To illustrate, consider a thief who attempts to steal a business's desktop computer. If the thief succeeds, the computer is "physical[ly] los[t]" but not necessarily "physical[ly] … damage[d]." If the thief cannot lift the computer and instead takes a hammer to it in frustration, the computer would be "physical[ly] … damage[d]" but not "physical[ly] los[t]." Yet if the thief

were only to change the password on the business's system so that its employees could not log in to the computer, there would be neither "physical … damage" nor "physical loss," though the computer would be unusable for some while. The Business Income provision might cover the first two cases, but not the third. *Accord Melcorp*, 2021 WL 2853371, at *5 (Illinois law) (adopting this hypothetical); *Georgetown Dental, LLC v. Cincinnati Ins. Co.*, 2021 WL 1967180, at *8 (S.D. Ind. May 17, 2021) (Indiana law) (same); *L&J Mattson's Co. v. Cincinnati Ins. Co., Inc.*, __ F. Supp. 3d __, 2021 WL 1688153, at *6 (N.D. Ill. Apr. 29, 2021) (Illinois law) (same).

In fact, it is ABC Diamonds's interpretation of the phrase "direct physical loss" that would violate the surplusage-avoidance principle by reading the word "physical" out of the Business Income provision. After all, if the mere loss of use were covered, what would be the difference between "direct loss" and "direct *physical* loss"? ABC Diamonds does not say, and the court cannot tell.

3. ABC Diamonds argues as well that the key language in the Business Income provision is "facially ambiguous," and that "Hartford's parochial characterization of its insuring obligations as applying only to 'damage' to Plaintiff's property fails to satisfy the burden of dismissal requiring it to show its reading of the Policy is the only reasonable interpretation." Doc. 35 at 9. For all the reasons given above, there is no ambiguity in the Business Income provision, so this argument fails. *See Santo's Italian Café*, 15 F.4th at 405 (Ohio law) ("But the policy is not ambiguous. '[D]irect physical loss of' property does not mean what Santo's Café says it means. It refers to direct physical loss of property, not the inability to use property.").

In sum, the policy's Business Income provision does not apply where, as here, government closure orders prohibit use of a business's premises for reasons unconnected to any change in the physical condition of the premises or in the physical condition or location of

property at the premises. In so holding, this court joins the many other courts to have interpreted materially identical provisions in the same manner. *See*, *e.g.*, *Mudpie*, 15 F.4th at 892 (California law) ("Mudpie alleges the Stay at Home Orders temporarily prevented Mudpie from operating its store as it intended, and urges us to interpret 'direct physical loss of or damage to' to be synonymous with 'loss of use.' We cannot endorse Mudpie's interpretation because California courts have carefully distinguished 'intangible,' 'incorporeal,' and 'economic' losses from 'physical' ones."); *Santo's Italian Café*, 15 F.4th at 402 (Ohio law) ("The Governor's shut-down orders … did not create a direct physical loss of property or direct physical damage to it. They simply prohibited one use of the property—in-person dining—while permitting takeout dining and through it all did not remotely cause direct physical damage to the property. … A loss of use simply is not the same as a physical loss."); *Oral Surgeons*, 2 F.4th at 1144 (Iowa law) ("The policy here clearly requires direct 'physical loss' or 'physical damage' to trigger business interruption and extra expense coverage. Accordingly, there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction."); *Dakota Ventures, LLC v. Oregon Mut. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 3572657, at *9 (D. Or. Aug. 11, 2021) (Oregon law) ("[T]he multitude of cases interpreting identical and similar language make clear that 'direct physical loss of or damage to property' does not include a 'loss of functionality' of undamaged property for its intended purpose."), *appeal docketed*, No. 21-35758 (9th Cir. Sept. 9, 2021); *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, __ F. Supp. 3d __, 2021 WL 2403088, at *7 (S.D.N.Y. June 11, 2021) (New York law) ("New York [federal district] courts have consistently maintained that 'direct physical loss of or damage' language requires physical damage to invoke coverage, and that loss of use due to the pandemic does not constitute physical damage when the covered property was physically

10

unharmed by the virus.") (collecting cases); *Berkseth-Rojas v. Aspen Am. Ins. Co.*, 513 F. Supp. 3d 724, 732 (N.D. Tex. 2021) (Minnesota law) ("[D]irect physical loss or damage requires something more than mere loss of use or function."); *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 499 F. Supp. 3d 670, 677 (N.D. Cal. 2020) (Hawaii law) ("Numerous courts have found that materially identical allegations [of loss of use] do not trigger coverage under similarly worded policies as a result of government closure orders. The cases consistently conclude that there needs to be some *physical* tangible injury (like a total deprivation of property) to support 'loss of property' or a *physical* alteration or active presence of a contaminant to support 'damage to' property.") (collecting cases); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 295 (S.D. Miss. 2020) (Mississippi law) ("Plaintiff's contention that 'loss of property' reasonably includes loss of usability is not sustainable.").

The court acknowledges that several district court decisions have interpreted similar insurance policy provisions to cover, or at least possibly cover, losses due to government COVID-19 closure orders. *See, e.g., Seifert v. IMT Ins. Co.*, __ F. Supp. 3d __, 2021 WL 2228158, at *5 (D. Minn. June 2, 2021) (Minnesota law); *Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 457, 462-64 (N.D. Ill. 2021) (Texas law); *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729, 741-43 (N.D. Ill. 2021) (Illinois, Wisconsin, Minnesota, and Tennessee law). But disagreement among courts regarding the interpretation of a policy provision does not, by itself, render the provision ambiguous. *See Erie Ins. Grp. v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996) (rejecting the argument that an insurance policy term was ambiguous "on the basis of conflicting case law" interpreting the term); *TMW Enters. v. Fed. Ins. Co.*, 619 F.3d 574, 580 (6th Cir. 2010) ("[A] disagreement among three judges about whether a contractual provision is ambiguous does not establish that it

11

is ambiguous … ."); *City of Austin v. Decker Coal Co.*, 701 F.2d 420, 426 n.17 (5th Cir. 1983) ("[T]he fact that courts may disagree as to the import of a contract term does not, by that fact alone, mean that it is ambiguous."); *Cont'l Ins. Co. v. Bones*, 596 N.W.2d 552, 556-58 (Iowa 1999) (holding a policy provision to be unambiguous even though other courts had interpreted similar provisions differently). Those decisions therefore do not preclude the court's rejection of ABC Diamonds's interpretation of the Business Income provision on a Rule 12(b)(6) motion.

## II.  Extra Expense and Extended Business Income Provisions

ABC Diamonds also claims coverage under the policy's Extra Expense and Extended Business Income provisions. Doc. 29 at ¶¶ 111-180. The Extended Business Income provision extends, for up to thirty days, the time for which Hartford will pay for "Business Income loss payable under th[e] policy." Doc. 29-1 at p. 35, § A.5.r(1). This provision serves only to extend the scope or duration of coverage under the Business Income provision; it is not an independent trigger for coverage, and ABC Diamonds offers no argument why it would provide coverage if the Business Income provision does not. Accordingly, because the Business Income provision does not provide coverage here, neither does the Extended Business Income provision.

The Extra Expense provision states:

> [Hartford] will pay reasonable and necessary Extra Expense [ABC Diamonds] incur[s] during the "period of restoration" that [it] would not have incurred *if there had been no direct physical loss or physical damage to property at [ABC Diamonds's premises]* … caused by or resulting from a Covered Cause of Loss.

*Id*. at p. 34, § A.5.p(1) (emphasis added). Like the Business Income provision, the Extra Expense provision requires "direct physical loss or physical damage to property at [ABC Diamonds's premises]" in order to trigger coverage. *Ibid*. As explained above, ABC Diamonds has not alleged direct physical loss or damage to property at its premises. Accordingly, its claim under the Extra Expense provision fails. *See Oral Surgeons*, 2 F.4th at 1144 (Iowa law) ("The

policy here clearly requires direct 'physical loss' or 'physical damage' to trigger business interruption and extra expense coverage. Accordingly, there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction.").

### III. Civil Authority Provision

The Civil Authority provision states:

> [Hartford's] insurance is extended to apply to the actual loss of Business Income [ABC Diamonds] sustain[s] when access to [its premises] is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [its premises].

Doc. 29-1 at p. 35, § A.5.q(1). By its terms, the provision applies only when the following events occur: (1) some property in the immediate vicinity of ABC Diamonds's premises suffers some sort of covered loss; *and* (2) some government action prohibits access to ABC Diamonds's premises as a direct result of that loss. *Ibid*.

ABC Diamonds argues that it has alleged a covered loss to other property in that "the relevant government shutdown orders in Illinois … caused wide-scale physical loss of property in the vicinity of Plaintiff's business premises and beyond." Doc. 35 at 6 n.1. Even if ABC Diamonds's premise—that nearby properties suffered covered losses from the closure orders—were correct, the Civil Authority provision still would not apply. The reason is plain: the provision requires that the government action prohibiting access to ABC Diamonds's premises be taken in response to those covered losses, and the complaint does not allege, nor does ABC Diamonds argue, that the closure orders were taken in response to other property within the immediate area of its premises having suffered a covered loss. It necessarily follows that the Civil Authority provision provides no coverage here.

13

In holding that the Civil Authority provision does not provide coverage to ABC Diamonds, this court joins the many other courts to have interpreted materially identical provisions in the same manner. *See*, *e.g.*, *Whiskey Flats Inc. v. Axis Ins. Co.*, 519 F. Supp. 3d 231, 237 (E.D. Pa. 2021) (Pennsylvania law) ("[Plaintiff] did not close because of damage to a nearby property or because there was some dangerous physical condition at another nearby property. It closed because the Shutdown Orders applied to its own operations. Thus, its shutdown and resulting losses fall outside the scope of the Civil Authority coverage."), *appeal docketed*, No. 21-1294 (3d Cir. Feb. 18, 2021); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 512 F. Supp. 3d 1019, 1025 (N.D. Cal. 2021) (California law) ("[I]t is apparent from the plain language of the cited civil authority orders that such directives were issued to stop the spread of COVID-19 and not as a result of any physical loss of or damage to property."). The court respectfully disagrees with those courts to have reached the contrary result. *See*, *e.g.*, *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 803-04 (W.D. Mo. 2020) (Missouri law).

## Conclusion

Hartford's motion to dismiss is granted. Although it is difficult to imagine how ABC Diamonds might cure the deficiencies in its complaint, it will be given one chance to replead. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). The operative complaint is dismissed without prejudice, and ABC Diamonds is given until December 23, 2021, to file a

third amended complaint. If ABC Diamonds does not do so, the dismissal will convert automatically to a with-prejudice dismissal and judgment will be entered.

December 10, 2021             _____
                            United States District Judge